

FILED
2020 Jun-26  PM 02:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

APPEAL,PROTECTIVE ORDER

# U.S. District Court
# Northern District of Alabama (Eastern)
# CIVIL DOCKET FOR CASE #: <u>1:18-cv-01979-ACA</u>
### *Internal Use Only*

Holt v. Kyocera Document Solutions Alabama, LLC
Assigned to: Judge Annemarie Carney Axon
Cause: 42:2000e Job Discrimination (Employment)

Date Filed: 11/30/2018
Date Terminated: 05/27/2020
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Gregory Holt**      represented by    **Ashley Rose Rhea**
RHEA LAW LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
205-675-0476
Fax: 205-623-4985
Email: arhea@rhealawllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kyocera Document Solutions Alabama, LLC**    represented by    **David L Warren , Jr**
OGLETREE DEAKINS NASH SMOAK
& STEWART PC
420 20th Street North, Suite 1900
Birmingham, AL 35203-3212
205-328-1900
Fax: 205-328-6000
Email: david.warren@ogletreedeakins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary O'Keefe O'Neill**
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, PC
420 North 20th Street, Ste. 1900
Birmingham, AL 35203
205-714-4408
Fax: 205-328-6000
Email: mary.oneill@ogletree.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/30/2018 | 1 | | COMPLAINT against Kyocera Document Solutions Alabama, LLC (Filing fee $ 400.00 receipt #B4601093783), filed by Gregory Holt. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(JLC) (Entered: 11/30/2018) |
| 01/24/2019 | 2 | | NOTICE of Appearance by Ashley Rose Rhea on behalf of Gregory Holt (Rhea, Ashley) (Entered: 01/24/2019) |
| 01/25/2019 | 3 | | Summons Issued as to Kyocera Document Solutions Alabama, LLC. del to plaintiff (TLM, ) (Entered: 01/28/2019) |
| 02/04/2019 | 4 | | SUMMONS Returned Executed by Gregory Holt. Kyocera Document Solutions Alabama, LLC served on 1/30/2019, answer due 2/20/2019. (Rhea, Ashley) (Entered: 02/04/2019) |
| 02/20/2019 | 5 | | ANSWER to 1 Complaint by Kyocera Document Solutions Alabama, LLC.(Warren, David) (Entered: 02/20/2019) |
| 02/20/2019 | 6 | | INITIAL ORDER GOVERNING ALL FURTHER PROCEEDINGS – with appendices attached. Signed by Judge Annemarie Carney Axon on 2/20/19. (SAC ) (Entered: 02/20/2019) |
| 02/22/2019 | 7 | | Corporate Disclosure Statement by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (Warren, David) (Entered: 02/22/2019) |
| 02/22/2019 | 8 | | NOTICE of Appearance by Mary O'Keefe O'Neill on behalf of Kyocera Document Solutions Alabama, LLC (O'Neill, Mary) (Entered: 02/22/2019) |
| 04/04/2019 | 9 | | REPORT of Rule 26(f) Planning Meeting. (Rhea, Ashley) (Entered: 04/04/2019) |
| 04/15/2019 | 10 | | Joint MOTION for Protective Order by Kyocera Document Solutions Alabama, LLC. (Attachments: # 1 Exhibit A – Agreed Protective Order)(O'Neill, Mary) (Entered: 04/15/2019) |
| 04/16/2019 | 11 | | TEXT ORDER – A **Scheduling Conference** is set for **April 19, 2019, 9:45 AM**, sixth floor chambers, Hugo L Black US Courthouse, Birmingham, AL before Judge Annemarie Carney Axon. Signed by Judge Annemarie Carney Axon on 4/16/19. (SAC ) (Entered: 04/16/2019) |
| 04/16/2019 | 12 | | AGREED PROTECTIVE ORDER Signed by Judge Annemarie Carney Axon on 4/16/19. (SAC ) (Entered: 04/16/2019) |
| 04/19/2019 | | | Minute Entry for proceedings held before Judge Annemarie Carney Axon: Scheduling Conference held on 4/19/2019; order to follow. (SAC ) (Entered: 04/19/2019) |
| 04/19/2019 | 13 | | SCHEDULING ORDER: All Discovery due by December 2, 2019. All potentially Dispositive Motions due by February 18, 2020. The parties shall file a Joint Status Report on or beforeNovember 1, 2019. See all other deadlines and instructions as set out herein. Signed by Judge Annemarie Carney Axon on 4/19/2019. (JLC) (Entered: 04/19/2019) |
| 05/22/2019 | | | Minute Entry for proceedings held before Judge Annemarie Carney Axon: Administrative Telephone Conference held on 5/22/2019. (SAC ) (Entered: |

| | | | |
|---|---|---|---|
| | | | 05/22/2019) |
| 11/01/2019 | 14 | | STATUS REPORT *Joint Status Report* by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (O'Neill, Mary) (Entered: 11/01/2019) |
| 02/18/2020 | 15 | | MOTION for Summary Judgment by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 02/18/2020) |
| 02/18/2020 | 16 | | Evidentiary Material re: 15 MOTION for Summary Judgment . (Attachments: # 1 Exhibit Tab 1 – Holt Depo & Exhs (Part 1 of 12), # 2 Exhibit Tab 1 – Holt Exhs (Part 2 of 12), # 3 Exhibit Tab 1 – Holt Exhs (Part 3 of 12), # 4 Exhibit Tab 1 – Holt Exhs (Part 4 of 12), # 5 Exhibit Tab 1 – Holt Exhs (Part 5 of 12), # 6 Exhibit Tab 1 – Holt Exhs (Part 6 of 12), # 7 Exhibit Tab 1 – Holt Exhs (Part 7 of 12), # 8 Exhibit Tab 1 – Holt Exhs (Part 8 of 12), # 9 Exhibit Tab 1 – Holt Exhs (Part 9 of 12), # 10 Exhibit Tab 1 – Holt Exhs (Part 10 of 12), # 11 Exhibit Tab 1 – Holt Exhs (Part 11 of 12), # 12 Exhibit Tab 1 – Holt Exhs (Part 12 of 12), # 13 Exhibit Tab 2 – Sharp Depo & Exhs (Part 1 of 8), # 14 Exhibit Tab 2 – Sharp Exhs (Part 2 of 8), # 15 Exhibit Tab 2 – Sharp Exhs (Part 3 of 8), # 16 Exhibit Tab 2 – Sharp Exhs (Part 4 of 8), # 17 Exhibit Tab 2 – Sharp Exhs (Part 5 of 8), # 18 Exhibit Tab 2 – Sharp Exhs (Part 6 of 8), # 19 Exhibit Tab 2 – Sharp Exhs (Part 7 of 8), # 20 Exhibit Tab 2 – Sharp Exhs (Part 8 of 8), # 21 Exhibit Tab 3 – Hartsock Depo & Exhs, # 22 Exhibit Tab 4 – Sharp Declaration, # 23 Exhibit Tab 5 – Hartsock Declaration)(Warren, David) (Entered: 02/18/2020) |
| 02/19/2020 | 17 | | NOTICE by Kyocera Document Solutions Alabama, LLC re 15 MOTION for Summary Judgment , 16 Evidentiary Material,,,, *NOTICE OF REVISED EVIDENTIARY SUBMISSION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT* (Attachments: # 1 Exhibit 1 – Pages from Doc 16–2, # 2 Exhibit 2 – Pages from Doc 16–3, # 3 Exhibit 3 – Pages from Doc 16–4, # 4 Exhibit 4 – Pages from Doc 16–5)(Warren, David) (Entered: 02/19/2020) |
| 02/19/2020 | 18 | | Brief re 15 MOTION for Summary Judgment , 17 Notice (Other), 16 Evidentiary Material,,,, filed by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 02/19/2020) |
| 02/20/2020 | 19 | | TEXT ORDER re 15 MOTION for Summary Judgment – A response is due to be filed by **March 12, 2020**. A reply, if any, is due to be filed by **March 26, 2020**. Signed by Judge Annemarie Carney Axon on 2/20/20. (SAC) (Entered: 02/20/2020) |
| 03/12/2020 | 20 | | Evidentiary Material *Filed in Opposition to Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Rhea, Ashley) (Entered: 03/12/2020) |
| 03/16/2020 | 21 | | Brief re 18 Brief *in Opposition to Defendant's Motion for Summary Judgment* filed by Gregory Holt. (Rhea, Ashley) (Entered: 03/16/2020) |
| 04/09/2020 | 22 | | REPLY Brief filed by Defendant Kyocera Document Solutions Alabama, LLC re: 21 Brief filed by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 04/09/2020) |
| 05/27/2020 | 23 | 37 | MEMORANDUM OPINION – The court GRANTS Kyocera's motion for summary judgment and WILL ENTER SUMMARY JUDGMENT in favor of |

| | | | |
|---|---|---|---|
| | | | Kyocera and against Mr. Holt on all of his claims. The court will enter a separate final judgment in accordance with this opinion. Signed by Judge Annemarie Carney Axon on 5/27/2020. (KEK) (Entered: 05/27/2020) |
| 05/27/2020 | 24 | 61 | FINAL JUDGMENT – Consistent with the accompanying memorandum opinion, the court ENTERS JUDGMENT AS A MATTER OF LAW in favor of Defendant Kyocera Document Solutions Alabama, LLC and against Plaintiff Gregory Holt on all of his claims. Signed by Judge Annemarie Carney Axon on 5/27/2020. (KEK) (Entered: 05/27/2020) |
| 06/16/2020 | 25 | | BILL OF COSTS by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (Warren, David) (Entered: 06/16/2020) |
| 06/26/2020 | 26 | 6 | NOTICE OF APPEAL as to 24 Order Dismissing Case, by Gregory Holt. Filing fee $ 505, receipt number 1126–3618521. Appeal Record due by 7/10/2020. (Rhea, Ashley) (Entered: 06/26/2020) |
| 06/26/2020 | 27 | 5 | TRANSMITTAL SHEET to the Eleventh Circuit Court of Appeals. (KEK) (Entered: 06/26/2020) |

Case 1:18-cv-01979-ACA   Document 28   Filed 06/26/20   Page 1 of 61

**FILED**

2020 Jun-26  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
**Northern District of Alabama**
**Office of the Clerk**
**Hugo L. Black United States Courthouse**
**Room 140, 1729 5th Avenue North**
**Birmingham, Alabama 35203**
**(205) 278-1700**

June 26, 2020

Dave Smith, Clerk of Court
U.S. Court of Appeals, 11th Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303                    U.S.D.C. No. 1:18-cv-1979
                                     U.S.C.A. No.  NEW APPEAL
                                     IN RE:Holt v Kyocera Document Solutions Alabama, LLC

Enclosed are documents regarding an appeal in this matter.  Please acknowledge receipt on the enclosed copy of this transmittal.

X        Certified copy of Notice of Appeal, Docket Entries and Judgment/Order and Opinion appealed from enclosed.  Please check
         if judgment was oral:

         Certified record  supplemental record on appeal consisting of:  volume(s) of pleadings, etc.;  volume(s) of transcripts;

X        First Notice of Appeal?  YES        Dates of other Notices:

         The following materials **SEALED** in this court (order enclosed) consisting of:

         Original papers (court file) and certified copy of docket entries per USCA request.

X        There was no hearing from which a transcript could be made.

         Copy of CJA Form 20 or District Court order appointing counsel.

X        The appellant docket fee has been paid.        Date Paid: 6/26/2020

         The appellant has been  leave to appeal in forma pauperis and  a request for certificate of appealability (order enclosed).

X        The Judge/Magistrate Judge appealed from is: Annemarie Carney Axon

         The Court Reporter is:

         This is a **BANKRUPTCY APPEAL**.  Please send notice of final order and/or opinion to: Scott W. Ford, Acting Clerk, U.S.
         Bankruptcy Court, 1800 5th Avenue North, Birmingham, Alabama 35203.

         This is a **DEATH PENALTY** appeal.

         Appellant having failed to cure procedural defects re: appeal fee, the appeal is due to be DISMISSED.

         Other:

xc:  Counsel                    Sharon Harris, Clerk

                                By: s/ K. Kimbrough
                                    Deputy Clerk

FILED

2020 Jun-26  PM 02:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| GREGORY HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action Number:** |
| v. | ) | |
| | ) | **1:18-cv-01979-ACA** |
| KYOCERA DOCUMENT | ) | |
| SOLUTIONS ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF APPEAL

COMES NOW the Plaintiff Gregory Holt and hereby gives notice of his appeal to the United States Court of Appeals for the Eleventh Circuit from the order granting summary judgment entered in this case on May 27, 2020 (Doc. 23). Attached hereto are the Order and Opinion being appealed.

Respectfully submitted,

*/s/ Ashley R. Rhea*
Ashley R. Rhea
ATTORNEY FOR PLAINTIFF
Rhea Law LLC
104 23rd Street South, Suite 100
Birmingham, Alabama 35233
Telephone: (205) 675-0476
Facsimile: (205) 623-4985
arhea@rhealawllc.com

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was served electronically via CM/ECF on June 26, 2020:

David L. Warren, Jr.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
420 20th Street North
Suite 1900
Birmingham, Alabama 35203

Mary O. O'Neill
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
420 20th Street North
Suite 1900
Birmingham, Alabama 35203

/s/ Ashley R. Rhea
OF COUNSEL

FILED
2020 May-27  AM 08:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY HOLT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:18-cv-01979-ACA** |
| | } | |
| **KYOCERA DOCUMENT** | } | |
| **SOLUTIONS ALABAMA, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Kyocera Document Solutions Alabama, LLC's ("Kyocera") motion for summary judgment. (Doc. 15).

Plaintiff Gregory Holt worked for Kyocera as a delivery truck driver. In November 2016, Mr. Holt was injured on the job and Kyocera terminated his employment after he took five months of leave. Mr. Holt alleges that Kyocera discriminated against him by terminating him because of his disability and by failing to provide a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA").

Mr. Holt's termination claim fails as a matter of law because Mr. Holt has not established a prima facie case of disability discrimination and alternatively, because he has not presented evidence to rebut Kyocera's legitimate, non-

discriminatory reason for his termination.  Mr. Holt's reasonable accommodation claim fails as a matter of law because Mr. Holt has not established that he is a "qualified individual" within the meaning of the ADA.  Accordingly, the court **GRANTS** Kyocera's motion for summary judgment and **WILL ENTER JUDGMENT AS A MATTER OF LAW** in favor of Kyocera and against Mr. Holt on all of his claims.

## I.     BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

### 1.     Kyocera's Operations and Mr. Holt's Employment

Kyocera is a company that provides copier and printer hardware and software products and services to customers throughout Alabama.  (Doc. 16-22 at ¶ 3).  During the relevant time period, Kenneth Hartstock was Kyocera's Branch President and was in charge of overall operations.  (Doc. 16-21 at 6).  Jason Sharp was Kyocera's Controller and oversaw financial operations and human resources. (Doc. 16-13 at 6).

In August 2015, Kyocera hired Mr. Holt as a Warehouse Logistics Driver. (Doc. 16-1 at 14).[1]  Although other employees occasionally made deliveries, Mr. Holt was Kyocera's only delivery driver.  (Doc. 16-1 at 15; Doc. 16-21 at 6, 11).

Mr. Holt's offer letter included the following description of the delivery driver position:

- Deliver equipment safely, efficiently, and courteously to future and current customers
- Help with maintaining the warehouse
- Assist in UPS shipping orders
- Assist in any work related efforts as requested

(Doc. 16-1 at 105).   According to Kyocera's official delivery driver job description, a delivery driver performs the following duties, among others: delivery of Kyocera's products to its customers, loading products onto the delivery truck and offloading them upon arrival at the destination, assisting with shipping and receiving functions, and performing other tasks as requested.  (*Id.* at 106).   In addition, the job description states that a delivery driver must have the ability to lift up to 50 pounds and must be able to bend, stretch, and stand for extended periods of time.  (*Id.*).

Mr. Holt was based out of Kyocera's Birmingham-area office, but he made deliveries for all of the company's four office locations.  (Doc. 16-1 at 15).  On

---

[1] Mr. Holt previously worked for Kyocera as a delivery driver from November 2011 until January 2013.  (Doc. 16-1 at 100–103).  Mr. Holt's first period of employment with Kyocera is not the subject of this lawsuit.

delivery days, Mr. Holt helped other employees unbox and assemble copiers that outsider carriers delivered and unloaded at Kyocera's warehouse.  (*Id.* at 15–16).  Unless copiers were already on a stand, unboxing and assembling the copiers required Mr. Holt to bend.  (*Id.* at 16–17).

After unpacking and assembling the copiers, Mr. Holt wrapped the copiers in plastic wrap, which also required him to bend over.  (Doc. 16-1 at 18).   Then, Mr. Holt loaded the copiers on to his truck and secured them in place with blankets and corner protectors.  (*Id.* at 19–20).

When Mr. Holt arrived at a customer's location, he would bend over to remove straps, blankets, and corner protectors from a copier before rolling the copier off the truck.  (*Id.* at 20–21).  Mr. Holt, sometimes with the help of another Kyocera employee or the customer's IT employee, would unload the copier and move it to the location where the customer directed.  (Doc. 16-1 at 21).   Mr. Holt would unwrap the plastic wrap and plug the copier in, which required him to bend over.  (*Id.*).  Mr. Holt would then make his next delivery.  (*Id.* at 22).

When he was not making deliveries, Mr. Holt helped other Kyocera employees with a variety of jobs, including cleaning the warehouse, taking old parts to a scrap yard, and stocking boxes of toner on lower shelves.  (Doc. 16-1 at 22–23).  All of these jobs required bending.  (*Id.*).

2.   Mr. Holt's On-the-Job Injury and Work Restrictions

On November 2, 2016, Mr. Holt injured his back at work while moving a copier from a freight elevator to the sidewalk.  (Doc. 16-1 at 28–29).  Later that day, he notified Mr. Sharp of the injury.  (*Id.* at 28–29; Doc. 17-1 at 5).  At Mr. Sharp's recommendation, Mr. Holt went to the emergency room.  (Doc. 16-1 at 24; 16-2 at 5; Doc. 16-13 at 9).  Mr. Sharp received an excuse to be off work from November 3 until November 7, 2016.  (Doc. 16-1 at 24; Doc. 16-2 at 5).  A nurse practitioner then released Mr. Holt to return to work, but Mr. Holt could not stand, walk, bend, squat, climb, reach, twist, crawl, or lift anything over five pounds. (Doc. 16-2 at 6).  Mr. Holt did not return to work at that time, and he applied for workers compensation benefits.  (*Id.* at 4).[2]

On November 15, 2016, as part of Mr. Holt's workers compensation claim, Mr. Sharp completed a form documenting the job requirements for Mr. Holt's delivery driver position.  (*Id.* at 12).  Among other things, Mr. Sharp checked boxes indicating that Mr. Holt's job required him to bend and lift up to 50 pounds occasionally (or up to 33% of the time).  (Doc. 16-2 at 12).

On November 21, 2016 and again on December 29, 2016, Mr. Holt's doctor wrote generic letters explaining that Mr. Holt could return to work but was unable

_____

[2] The parties dispute whether Mr. Holt initially took paid leave or whether Kyocera placed him on unpaid leave.  (Doc. 16-8 at 1; 16-22 at ¶ 6; *see also* Doc. 18 at ¶ 9; Doc. 21 at ¶ 13).  Mr. Holt's payroll records suggest that he was paid through November 18, 2016.  (Doc. 16-8 at 1).

to stoop, bend, crawl, or lift more than 20 pounds.  (Doc. 16-2 at 21; Doc. 16-3 at 8).

On February 1, 2017, Mr. Holt's doctor issued another return to work notice that continued the 20-pound lifting restriction and the bending and crawling restrictions.  (Doc. 16-4 at 3).  Then, at Mr. Holt's request, his doctor changed the lifting restriction to include a 60 pound weight limit instead of 20 pound limit.  (Doc. 17-3 at 2).  Mr. Holt asked the doctor to change the lifting restriction because a recent functional capacity evaluation had cleared him to lift 60 pounds.  (Doc. 16-1 at 35; *see also* Doc. 16-4 at 1–2, 7).

After a March 22, 2017 appointment with his doctor, Mr. Holt's physician continued him on the same restrictions—no lifting over 60 pounds, no bending, and no crawling.   (Doc. 16-4 at 8, 11).

### 3.    Mr. Holt's Communications with Kyocera About Returning to Work

On three occasions between November 2016 and February 2017, Mr. Holt asked Mr. Sharp or Mr. Hartstock about returning to work.  (Doc. 16-1 at 45).  Mr. Holt does not remember the dates, but on the first and second occasions, Mr. Holt spoke with Mr. Hartsock when he gave Mr. Hartsock work restriction notices from his doctor.  (*Id.* at 45–46).  Mr. Holt asked Mr. Hartsock if there was anything he could do, and Mr. Hartsock told him he did not have anything for him.  (*Id.*).  Mr. Holt's third meeting was with Mr. Sharp in February 2017.  (Doc. 16-1 at 46).  Mr.

Holt told Mr. Sharp he needed to come back to work and asked if there was anything he could do, and Mr. Sharp told him that he did not have anything for him to do. (*Id.*). Mr. Holt did not have an updated work restriction when he met with Mr. Sharp. (*Id.*). During these three meetings, Mr. Holt "asked for any job that was available." (Doc. 16-1 at 57).

Mr. Holt testified that he had another conversation with Mr. Sharp and asked to be considered for a sales representative position. (*Id.* at 57–58). Mr. Sharp told Mr. Holt that he was not qualified for that position. (*Id.* at 58). The sales position Mr. Holt wanted had been vacated in December 2016. (Doc. 16-1 at 46; Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3). Instead of filling the position, Kyocera decided to eliminate the position and split the job responsibilities among several employees. (Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3).

At the end of February 2017, Mr. Holt's workers compensation attorney, Ed Berry, began communicating with Kyocera about Mr. Holt's potential return to work. In a February 23, 2017 letter approved by Mr. Holt, Mr. Berry asked Kyocera to modify Mr. Holt's delivery driver job to allow him to perform it in his "limited status" or allow him to transfer to an open position, such as the sales job that he previously discussed with Mr. Sharp. (Doc. 16-1 at 44–45; Doc. 16-6 at 4).

After Mr. Berry sent his letter, Mr. Holt returned to Kyocera's office when he received any updated work restrictions. (Doc. 16-1 at 46). During those visits,

he would ask Mr. Sharp if there was anything for him to do, and on each occasion, Mr. Sharp told him that he did not have anything for him at that time. (*Id.*).

Kyocera's Associate General Counsel, Wylie Van Ness, responded to Mr. Berry's letter on March 13, 2017. (Doc. 16-6 at 6–7). Her letter included Kyocera's delivery driver job description, and it stated that to work as a delivery driver Mr. Holt must be able to lift up to 50 lbs. and bend, stretch, and stand for extended periods. (*Id.*). Ms. Van Ness also noted that Mr. Holt's most recent work restriction notice prohibited him from bending and crawling or lifting more than 60 pounds. (Doc. 16-16 at 6). She then explained that while the weight restriction was within the range stated on Mr. Holt's job description, Kyocera could not return Mr. Holt to the delivery driver position due to the bending requirements of the position. (*Id.*).

Concerning the possibility of moving to a sales position, Ms. Van Ness stated that Mr. Holt did not have many of the qualifications Kyocera looks for in candidates for a sales position, such as sales experience. (Doc. 16-6 at 6). Ms. Van Ness then stated that there were no positions open for which he was qualified and which he could perform with his work restrictions. (*Id.*). Ms. Van Ness explained that Kyocera would give Mr. Holt thirty days to see if he could obtain updated restrictions that would allow him to return to work as a delivery driver. (*Id.*). Ms. Van Ness also stated that if Mr. Holt did not obtain updated restrictions during that

period that would allow him to perform the essential functions of a delivery driver position, Kyocera reserved the right to terminate him.  (Doc. 16-6 at 6).  Mr. Berry showed Ms. Van Ness's letter to Mr. Holt.  (Doc. 16-1 at 48).

On March 23, 2017, Mr. Berry replied to Ms. Van Ness's letter and asked whether Mr. Holt could take Family and Medical Leave Act (FMLA) leave and, if not, whether Kyocera could give Mr. Holt four additional months of extended leave under the ADA.  (Doc. 16-6 at 8).  Mr. Holt was not aware that Mr. Berry sent this letter, but he concedes that no doctor's note supported the extended leave request.  (Doc. 16-1 at 48–49).

On April 6, 2017, Kyocera's outside counsel, Thomas Bright, responded to Mr. Berry's March 23, 2017 letter.  (Doc. 16-6 at 9–10).  Mr. Bright confirmed that Mr. Holt had been off work since his injury on November 2, 2016. (Doc. 16-6 at 9).  Mr. Bright explained that Mr. Holt was not eligible for FMLA leave because Kyocera was not obligated to provide FMLA leave due to its size.  (*Id.*).  Mr. Bright stated that Kyocera typically grants up to 12 weeks of unpaid, non-FMLA leave to employees for their own serious health condition, and it had provided Mr. Holt leave for approximately 22 weeks.  (Doc. 16-6 at 9).

Mr. Bright explained that the request for an additional four months of leave was not reasonable because Mr. Holt had been the only route delivery driver in the office, and Kyocera had had difficulty hiring temporary workers to fill the need.

9

(*Id.*).  He noted that when a temporary route driver had not been available, other Kyocera employees, including the general manager, had to put aside their existing duties to make deliveries, and that continuing to do so for an additional four months would place an undue hardship on Kyocera.  (*Id.* at 9–10).  With respect to Mr. Holt's request to be placed in a sales position, Mr. Bright stated that because Mr. Holt had no prior sales experience, he did not possess the critical skills for such a position.  (Doc. 16-6 at 10).

Mr. Bright then reiterated Kyocera's need for a route driver "immediately" and stated that if Mr. Holt could present an updated list of restrictions that would allow him to work as a delivery driver by April 15, 2017, then Kyocera would return him to work in the position.  (*Id.*).  The letter also stated that if Mr. Holt could identify a reasonable accommodation that would allow him to perform the essential functions of his delivery driver job, Kyocera would consider it.  (*Id.*).  Finally, Mr. Bright's letter advised that if Mr. Holt was not able to perform the essential functions of his position by April 15, 2017, then Kyocera would have no option but to terminate his employment.  (Doc. 16-6 at 10).

4.    Mr. Holt's Termination

Neither Mr. Berry nor Mr. Holt responded to Mr. Bright's April 6, 2017 letter by the April 15, 2017 deadline, and Mr. Holt had no further conversations with anyone at Kyocera after that date.  (Doc. 16-1 at 50).  Therefore, Mr.

10

Hartsock, after consulting with Mr. Sharp and Kyocera's parent company's human resources and legal team, decided to terminate Mr. Holt's employment.  (Doc. 16-21 at 19–22).

On April 20, 2017, Mr. Sharp sent Mr. Holt a letter notifying him that Kyocera had terminated his employment. (Doc. 16-1 at 50; Doc. 16-6 at 11).  The letter stated that Kyocera had not received an updated letter from Mr. Holt's doctor enabling him to return to work and "perform the essential functions of the delivery driver role as set forth in" the job description.  (Doc. 16-6 at 11).  Mr. Holt did not contact Mr. Sharp or anyone at Kyocera after receiving the letter.  (Doc. 16-1 at 51).

## II.   DISCUSSION

Mr. Holt asserts that his termination and Kyocera's failure to provide a reasonable accommodation violated the ADA.  The court considers the claims in reverse order.

### 1.    ADA Reasonable Accommodation

Mr. Holt claims that Kyocera denied his request for a reasonable accommodation, in violation of the ADA.  (Doc. 1 at  6–7).

Under the ADA, an employer may not discriminate against a "qualified individual on the basis of disability."   42 U.S.C.  § 12111(a).   "[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known

11

physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business. . . . " 42 U.S.C. § 12112(b)(5)(A). Therefore, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

Kyocera argues that is entitled to judgment as a matter of law on Mr. Holt's failure to accommodate claim because he has not created a question of fact about whether he is a "qualified individual" within the meaning of the ADA.[3] The court agrees.

The ADA defines a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

At the heart of this case is whether bending was an essential function of Mr. Holt's delivery driver position. The evidence establishes that all doctor's restrictions in place since Mr. Holt's injury on November 2, 2016 indicate that he

---

[3] Kyocera also argues that even if Mr. Holt were a "qualified individual," it can establish the affirmative defense of undue hardship. (Doc. 18 at 31–33). As explained below, Mr. Holt has not presented evidence creating a genuine dispute about whether he is a "qualified individual." Therefore, the court does not consider Kyocera's alternative argument.

cannot bend.  (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3; Doc. 17-4 at 2).[4]   Therefore, if bending is an essential function of Mr. Holt's job, then he could not perform the essential functions of the job without an accommodation.

"'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform."  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  To determine what functions are essential, the ADA states that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).  The court also may consider a number of other factors, including "[t]he amount of time spent on the job performing the function."  20 C.F.R. § 1630.2(n)(3)(iii).

Mr. Holt claims that because Kyocera provided three different job descriptions—Mr. Holt's offer letter, the company's official job description, and the job requirements form that Mr. Sharp completed as part of Mr. Holt's workers

---

[4] Mr. Holt contends that some medical notes that suggest that he could bend.  (Doc. 21 at ¶¶ 15–17) (citing Doc. 16-2 at 18; Doc. 17-2 at 2, 6–7).  Mr. Holt has not demonstrated that he provided this documentation to Kyocera before his termination when Kyocera asked for information about his restrictions.  Moreover, these records do nothing to undermine the multiple work restrictions issued by My Holt's physician which state unequivocally that he cannot bend. (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3; Doc. 17-4 at 2).

13

compensation claim—the evidence creates a question of fact as to which job description controls in determining the essential functions of Mr. Holt's position. (Doc. 21 at 17–21). The court is not persuaded and finds that the evidence establishes that bending was an essential function of the delivery driver position.

The record is unclear whether Kyocera prepared and distributed the delivery driver job description before advertising or interviewing applicants for the position, but even if it did not, Mr. Holt has not suggested that the court cannot consider the document as evidence of Kyocera's judgment about the essential functions of the job. And the document states that the delivery driver "[m]ust be able to bend . . . for extended periods of time." (Doc. 16-1 at 106).

The job functions form that Mr. Sharp completed as part of Mr. Holt's workers compensation claim is not, as Mr. Holt suggests, an official job description. It is however evidence of Kyocera's judgment about the fundamental aspects of Mr. Holt's delivery driver position. And the form is consistent with the official job description because it states that Mr. Holt was required to bend "occasionally," or up to 33% of the time. (*Id.*).

Mr. Holt testified that many tasks that accompanied his deliveries required him to bend. For example, Mr. Holt explained that unpacking all copiers that were not already on a stand, assembling them, wrapping them for transit, loading them on his truck, and unwrapping them at a customer's destination required him to

14

bend.  (Doc. 16-1 at 16–22).  So, by his own testimony, Mr. Holt could not prepare and deliver all of his loads without bending.  In addition, Mr. Holt testified that the non-delivery related tasks outlined in his job offer letter, such as cleaning the warehouse, picking up and taking old parts to a scrap yard, and stocking boxes of toner on lower shelves, required bending.  (Doc. 16-1 at 16–23; 105).   Therefore, as outlined in his job offer letter, Mr. Holt's testimony confirms that to "deliver equipment," to "help with maintaining the warehouse," and to "assist in any work related efforts as requested," he was required to bend.  (Doc. 16-1 at 105; *see also* Doc. 16-1 at 16–22).

Given Kyocera's documented emphasis on the importance of bending to the delivery driver position and Mr. Holt's own testimony, the court concludes that bending is an essential function of Mr. Holt's job.  Therefore, the court must determine whether a reasonable accommodation would have allowed Mr. Holt to perform this essential function.

"The plaintiff bears the burden of identifying an accommodation and showing that the accommodation would allow him to perform the essential functions of the job in question." *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017); *see Holly*, 492 F.3d at 1256 ("An accommodation is 'reasonable' and necessary under the ADA . . . only if it enables the employee to perform the essential functions of the job.").

15

In his brief in opposition to Kyocera's motion for summary judgment, Mr. Holt claims that he "could have performed the essential functions of his position with minimal modifications."  (Doc. 21 at 21).  But Mr. Holt does not identify what "minimal modifications" he ever requested or how those modifications would enable him to perform the bending function of his job.  During his three conversations with Mr. Sharp or Mr. Hartstock between November 2016 and February 2017, Mr. Holt asked generically if there was "anything" he could do. (Doc. 16-1 at 45–46).  Mr. Holt never asked for a specific accommodation to his delivery driver position.

Mr. Holt's counsel's February 23, 2017 letter is similarly lacking in detail. The letter asked Kyocera to modify the driver job so that Mr. Holt could perform the job in his "limited status."  (Doc. 16-4 at 4).  But much like Mr. Holt's vague inquiries into whether Kyocera "anything" for him to do, his counsel's letter likewise does not request that Kyocera modify the job in any particular way.

Mr. Holt argues that these requests to return to work triggered Kyocera's "duty to engage with him in considering various reasonable accommodations." (Doc. 21 at 21).  But, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *see Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff

cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."). In any event, through its April 6, 2017 letter to Mr. Holt's counsel, Kyocera invited Mr. Holt to identify a reasonable accommodation for it to consider. (Doc. 16-6 at 10). But neither Mr. Holt nor his counsel responded. (Doc. 16-1 at 50).

The only specific request that Mr. Holt personally made was that Kyocera reassign him to a sales position. (Doc. 16-1 at 57–58). Reassignment to a vacant position can be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). However, in this case, there was no vacant sales position to which to transfer Mr. Holt. Following the sale representative's resignation, Kyocera decided not to replace the employee and instead chose to eliminate his position and divide the job functions among other employees. (Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3).

Moreover, even if the position had been vacant and Mr. Holt was qualified for the job (which Kyocera disputes), Kyocera's failure to reassign him does not constitute denial of a reasonable accommodation because the evidence establishes that the sales position is a higher paying exempt position than Mr. Holt's lower paying non-exempt driver position. (Doc. 16-22 at ¶ 5). And "[t]he ADA does not mandate that employers promote disabled employees in order to accommodate them." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 (11th Cir. 2001).

17

To the extent Mr. Holt's counsel's March 23, 2017 request that Kyocera continue Mr. Holt's leave for an additional four months constitutes a request for an accommodation (*see* doc. 16-6 at 8),[5] such a request is not reasonable under the circumstances.  "[A] leave of absence might be a reasonable accommodation in some cases," but such a request is unreasonable if it does not allow an employee to perform his job duties "in the present or in the immediate future."  *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003).   By the time Mr. Holt requested an additional four months of leave, he had already been off work for almost five months.  (Doc. 16-6 at 8–9).  And Kyocera had provided Mr. Holt 22 total weeks of unpaid leave, which is 10 more weeks of unpaid leave than it generally provided to employees to care for serious health conditions.  (Doc. 16-6 at 9).  In addition, Mr. Holt's request for additional leave was not supported by any documentation that he would be able to perform the essential functions of his job at the end of the four-month period.  (Doc. 16-6 at 8).  In fact, the record establishes that Mr. Holt's doctor issued yet another bending restriction eight months after Mr. Holt's termination.  (Doc. 17-4 at 2).   Thus, Mr. Holt's request that Kyocera give him an additional four months of leave when he could not show that he would likely be able to perform the essential functions of his job is not a reasonable

---

[5] Mr. Holt's opposition to Kyocera's motion for summary judgment does not mention this request or otherwise argue that it is a reasonable accommodation.  (*See generally* Doc. 21).

18

accommodation under the ADA.  *See Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997).

Mr. Holt argues that Kyocera could have considered job restructuring and a part-time work schedule as reasonable accommodations.  (Doc. 21 at 21).  Job restructuring and part-time schedules are examples of reasonable accommodations under the ADA.  42 U.S.C. § 12111(9)(B).  But there is no evidence that Mr. Holt requested that Kyocera accommodate him in this manner while employed.  And even more fatal to Mr. Holt's claim is that his doctor's restrictions prohibit all bending.  (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3).  Therefore, Mr. Holt has not presented evidence regarding how these accommodations would have allowed him to perform the essential function of bending.  Accordingly, they are not reasonable accommodations.

Because Mr. Holt has not created a question of fact about whether he is a "qualified individual," his ADA reasonable accommodation claim fails, and the court **GRANTS** Kyocera's motion for summary judgment on this claim.

2.    ADA Termination

Mr. Holt also asserts that Kyocera terminated him because of his disability, in violation of the ADA.  (Doc. 1 at 5–6).

In the absence of direct evidence, courts analyze claims of discrimination in violation of the ADA under the burden-shifting framework established in

19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).  Under that test, the plaintiff must first establish a prima facie case of discrimination, creating a rebuttable presumption that the employer acted unlawfully.  *Id.* at 1336.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Holly*, 492 F.3d at 1255–56.  Next, the burden shifts to the employer to "articulat[e] a legitimate nondiscriminatory reason for the challenged employment decision."  *Farley*, 197 F.3d at 1336.  If the employer can satisfy its burden, then the plaintiff must offer evidence that the reason proffered was a pretext for discrimination or retaliation.  *Id.* To establish that a reason was pretextual, the plaintiff must present evidence that "the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Kyocera argues that Mr. Holt cannot establish a prima facie case because he cannot show that he is a qualified individual or that Kyocera terminated him because of his disability.  (Doc. 18 at 33–35).  Kyocera also argues that even if Mr. Holt could establish a prima facia case, he cannot demonstrate that Kyocera's

articulated non-discriminatory reason for his termination is pretext for unlawful discrimination. (*Id.* at 35–37).

Again, and for the same reasons explained above, *see supra* pp. 11–19, Mr. Holt has not created a question of fact about whether he is a "qualified individual" under the ADA. Therefore, he cannot establish a prima facie case of disability discrimination based on his termination.[6]

Even if Mr. Holt could establish a prima facie case of disability discrimination, he has not offered evidence demonstrating that Kyocera's articulated reason for terminating his employment is pretext for unlawful discrimination.

Kyocera's articulated legitimate, non-discriminatory reason for Ms. Holt's termination is that it believed that given his doctor's no bending restriction, Mr. Holt "could not do the basic delivery driver tasks to do the job." (Doc. 16-21 at 19; *see also id.* at 22; Doc. 16-6 at 11). Mr. Holt attempts to establish pretext by claiming that Kyocera's "asserted honest belief that Mr. Holt could not bend at all flies in the face of not only the record, but also logic itself." (Doc. 21 at 27). The court disagrees.

_____

[6] Because Mr. Holt cannot establish the second element of his prima facie case, namely whether he was a "qualified individual" under the ADA, the court does not consider Kyocera's argument that Mr. Holt has not shown that it discriminated against him because of his disability by terminating him.

Contrary to Mr. Holt's position, Kyocera did not argue that "Mr. Holt's disability status within the workers' compensation framework provided the particularized facts to support its 'honest belief'" that Mr. Holt could not return to work. (Doc. 21 at 27). Mr. Holt's termination letter notes that he had been on workers compensation leave for five months. (Doc. 16-6 at 9). But the undisputed evidence is that Kyocera made the decision to terminate Mr. Holt's employment because despite its request, neither Mr. Holt nor his attorney provided Kyocera with information suggesting that Mr. Holt's doctor had lifted his bending restriction, and if Mr. Holt could not bend, then he could not perform the essential functions of his position. (Doc. 16-21 at 19, 22; Doc. 16-6 at 9; Doc. 16-6 at 11).

Mr. Holt claims that his doctor's work restrictions "must be read within the context of his office visit notes," and that Kyocera "disregards evidence indicating that, at the time of his termination, Mr. Holt's restrictions were only temporary," as his doctor did not issue a permanent no bending restriction until April 18, 2018. (Doc. 21 at 28). Mr. Holt has presented no evidence demonstrating that he provided his doctor's office visit notes to Kyocera at any point while he was on leave or that they establish that he could perform his delivery driver position. In addition, even if Mr. Holt's bending restriction was temporary as of the date of his termination, every restriction he provided to Kyocera after his injury stated that he could not bend. (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11;

Doc. 17-3 at 2–3).  That Mr. Holt's doctor ultimately determined that the bending restriction was permanent does not undermine Kyocera's belief as of April 28, 2017, that Mr. Holt could not bend with or without accommodation, and therefore, could not perform his job.

Accordingly, Mr. Holt has not created a genuine dispute of material fact about Kyocera's belief that he could not perform the essential functions of his position.

Because Mr. Holt has not established a prima facie case of disability discrimination and because he has not created a genuine dispute of material fact about whether Kyocera's articulated reason for his termination was pretext for discrimination under the ADA, the court **GRANTS** Kyocera's motion for summary judgment on Mr. Holt's ADA termination claim.

## III.   CONCLUSION

The court **GRANTS** Kyocera's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Kyocera and against Mr. Holt on all of his claims.  The court will enter a separate final judgment in accordance with this opinion.

**DONE** and **ORDERED** this May 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

24

FILED

2020 May-27  AM 08:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY HOLT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:18-cv-01979-ACA** |
| | } | |
| **KYOCERA DOCUMENT** | } | |
| **SOLUTIONS ALABAMA, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## FINAL JUDGMENT

Consistent with the accompanying memorandum opinion, the court
**ENTERS JUDGMENT AS A MATTER OF LAW** in favor of Defendant
Kyocera Document Solutions Alabama, LLC and against Plaintiff Gregory Holt on
all of his claims.

The court **DIRECTS** the Clerk to close this case.

**DONE** and **ORDERED** this May 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

CLOSED,PROTECTIVE ORDER

# U.S. District Court
## Northern District of Alabama (Eastern)
### CIVIL DOCKET FOR CASE #: 1:18-cv-01979-ACA

| | |
|---|---|
| Holt v. Kyocera Document Solutions Alabama, LLC | Date Filed: 11/30/2018 |
| Assigned to: Judge Annemarie Carney Axon | Date Terminated: 05/27/2020 |
| Cause: 42:2000e Job Discrimination (Employment) | Jury Demand: Plaintiff |
| | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Gregory Holt**                    represented by    **Ashley Rose Rhea**
RHEA LAW LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
205-675-0476
Fax: 205-623-4985
Email: arhea@rhealawllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kyocera Document Solutions Alabama,**          represented by    **David L Warren , Jr**
**LLC**
OGLETREE DEAKINS NASH SMOAK &
STEWART PC
420 20th Street North, Suite 1900
Birmingham, AL 35203-3212
205-328-1900
Fax: 205-328-6000
Email: david.warren@ogletreedeakins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary O'Keefe O'Neill**
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, PC
420 North 20th Street, Ste. 1900
Birmingham, AL 35203
205-714-4408
Fax: 205-328-6000
Email: mary.oneill@ogletree.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

| | | |
|---|---|---|
| 11/30/2018 | 1 | COMPLAINT against Kyocera Document Solutions Alabama, LLC (Filing fee $ 400.00 receipt #B4601093783), filed by Gregory Holt. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(JLC) (Entered: 11/30/2018) |
| 01/24/2019 | 2 | NOTICE of Appearance by Ashley Rose Rhea on behalf of Gregory Holt (Rhea, Ashley) (Entered: 01/24/2019) |
| 01/25/2019 | 3 | Summons Issued as to Kyocera Document Solutions Alabama, LLC. del to plaintiff (TLM, ) (Entered: 01/28/2019) |
| 02/04/2019 | 4 | SUMMONS Returned Executed by Gregory Holt. Kyocera Document Solutions Alabama, LLC served on 1/30/2019, answer due 2/20/2019. (Rhea, Ashley) (Entered: 02/04/2019) |
| 02/20/2019 | 5 | ANSWER to 1 Complaint by Kyocera Document Solutions Alabama, LLC.(Warren, David) (Entered: 02/20/2019) |
| 02/20/2019 | 6 | INITIAL ORDER GOVERNING ALL FURTHER PROCEEDINGS - with appendices attached. Signed by Judge Annemarie Carney Axon on 2/20/19. (SAC ) (Entered: 02/20/2019) |
| 02/22/2019 | 7 | Corporate Disclosure Statement by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (Warren, David) (Entered: 02/22/2019) |
| 02/22/2019 | 8 | NOTICE of Appearance by Mary O'Keefe O'Neill on behalf of Kyocera Document Solutions Alabama, LLC (O'Neill, Mary) (Entered: 02/22/2019) |
| 04/04/2019 | 9 | REPORT of Rule 26(f) Planning Meeting. (Rhea, Ashley) (Entered: 04/04/2019) |
| 04/15/2019 | 10 | Joint MOTION for Protective Order by Kyocera Document Solutions Alabama, LLC. (Attachments: # 1 Exhibit A - Agreed Protective Order)(O'Neill, Mary) (Entered: 04/15/2019) |
| 04/16/2019 | 11 | TEXT ORDER - A **Scheduling Conference** is set for **April 19, 2019, 9:45 AM**, sixth floor chambers, Hugo L Black US Courthouse, Birmingham, AL before Judge Annemarie Carney Axon. Signed by Judge Annemarie Carney Axon on 4/16/19. (SAC ) (Entered: 04/16/2019) |
| 04/16/2019 | 12 | AGREED PROTECTIVE ORDER Signed by Judge Annemarie Carney Axon on 4/16/19. (SAC ) (Entered: 04/16/2019) |
| 04/19/2019 | | Minute Entry for proceedings held before Judge Annemarie Carney Axon: Scheduling Conference held on 4/19/2019; order to follow. (SAC ) (Entered: 04/19/2019) |
| 04/19/2019 | 13 | SCHEDULING ORDER: All Discovery due by December 2, 2019. All potentially Dispositive Motions due by February 18, 2020. The parties shall file a Joint Status Report on or beforeNovember 1, 2019. See all other deadlines and instructions as set out herein. Signed by Judge Annemarie Carney Axon on 4/19/2019. (JLC) (Entered: 04/19/2019) |
| 05/22/2019 | | Minute Entry for proceedings held before Judge Annemarie Carney Axon: Administrative Telephone Conference held on 5/22/2019. (SAC ) (Entered: 05/22/2019) |
| 11/01/2019 | 14 | STATUS REPORT *Joint Status Report* by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (O'Neill, Mary) (Entered: 11/01/2019) |
| 02/18/2020 | 15 | MOTION for Summary Judgment by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 02/18/2020) |
| 02/18/2020 | 16 | Evidentiary Material re: 15 MOTION for Summary Judgment . (Attachments: # 1 Exhibit Tab 1 - Holt Depo & Exhs (Part 1 of 12), # 2 Exhibit Tab 1 - Holt Exhs (Part 2 of 12), # 3 Exhibit Tab 1 - Holt Exhs (Part 3 of 12), # 4 Exhibit Tab 1 - Holt Exhs (Part 4 of 12), # 5 |

34

| | | |
|---|---|---|
| | | Exhibit Tab 1 - Holt Exhs (Part 5 of 12), # 6 Exhibit Tab 1 - Holt Exhs (Part 6 of 12), # 7 Exhibit Tab 1 - Holt Exhs (Part 7 of 12), # 8 Exhibit Tab 1 - Holt Exhs (Part 8 of 12), # 9 Exhibit Tab 1 - Holt Exhs (Part 9 of 12), # 10 Exhibit Tab 1 - Holt Exhs (Part 10 of 12), # 11 Exhibit Tab 1 - Holt Exhs (Part 11 of 12), # 12 Exhibit Tab 1 - Holt Exhs (Part 12 of 12), # 13 Exhibit Tab 2 - Sharp Depo & Exhs (Part 1 of 8), # 14 Exhibit Tab 2 - Sharp Exhs (Part 2 of 8), # 15 Exhibit Tab 2 - Sharp Exhs (Part 3 of 8), # 16 Exhibit Tab 2 - Sharp Exhs (Part 4 of 8), # 17 Exhibit Tab 2 - Sharp Exhs (Part 5 of 8), # 18 Exhibit Tab 2 - Sharp Exhs (Part 6 of 8), # 19 Exhibit Tab 2 - Sharp Exhs (Part 7 of 8), # 20 Exhibit Tab 2 - Sharp Exhs (Part 8 of 8), # 21 Exhibit Tab 3 - Hartsock Depo & Exhs, # 22 Exhibit Tab 4 - Sharp Declaration, # 23 Exhibit Tab 5 - Hartsock Declaration)(Warren, David) (Entered: 02/18/2020) |
| 02/19/2020 | 17 | NOTICE by Kyocera Document Solutions Alabama, LLC re 15 MOTION for Summary Judgment , 16 Evidentiary Material,,,, *NOTICE OF REVISED EVIDENTIARY SUBMISSION IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT* (Attachments: # 1 Exhibit 1 - Pages from Doc 16-2, # 2 Exhibit 2 - Pages from Doc 16-3, # 3 Exhibit 3 - Pages from Doc 16-4, # 4 Exhibit 4 - Pages from Doc 16-5)(Warren, David) (Entered: 02/19/2020) |
| 02/19/2020 | 18 | Brief re 15 MOTION for Summary Judgment , 17 Notice (Other), 16 Evidentiary Material,,,, filed by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 02/19/2020) |
| 02/20/2020 | 19 | TEXT ORDER re 15 MOTION for Summary Judgment - A response is due to be filed by **March 12, 2020**. A reply, if any, is due to be filed by **March 26, 2020**. Signed by Judge Annemarie Carney Axon on 2/20/20. (SAC) (Entered: 02/20/2020) |
| 03/12/2020 | 20 | Evidentiary Material *Filed in Opposition to Defendant's Motion for Summary Judgment*. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Rhea, Ashley) (Entered: 03/12/2020) |
| 03/16/2020 | 21 | Brief re 18 Brief *in Opposition to Defendant's Motion for Summary Judgment* filed by Gregory Holt. (Rhea, Ashley) (Entered: 03/16/2020) |
| 04/09/2020 | 22 | REPLY Brief filed by Defendant Kyocera Document Solutions Alabama, LLC re: 21 Brief filed by Kyocera Document Solutions Alabama, LLC. (Warren, David) (Entered: 04/09/2020) |
| 05/27/2020 | 23 | MEMORANDUM OPINION - The court GRANTS Kyocera's motion for summary judgment and WILL ENTER SUMMARY JUDGMENT in favor of Kyocera and against Mr. Holt on all of his claims. The court will enter a separate final judgment in accordance with this opinion. Signed by Judge Annemarie Carney Axon on 5/27/2020. (KEK) (Entered: 05/27/2020) |
| 05/27/2020 | 24 | FINAL JUDGMENT - Consistent with the accompanying memorandum opinion, the court ENTERS JUDGMENT AS A MATTER OF LAW in favor of Defendant Kyocera Document Solutions Alabama, LLC and against Plaintiff Gregory Holt on all of his claims. Signed by Judge Annemarie Carney Axon on 5/27/2020. (KEK) (Entered: 05/27/2020) |
| 06/16/2020 | 25 | BILL OF COSTS by Kyocera Document Solutions Alabama, LLC. filed by Kyocera Document Solutions Alabama, LLC (Warren, David) (Entered: 06/16/2020) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 06/25/2020 16:28:21 |

| PACER Login: | rhealawllc:5720545:0 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 1:18-cv-01979-ACA |
| Billable Pages: | 3 | Cost: | 0.30 |

FILED

2020 May-27  AM 08:39
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY HOLT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 1:18-cv-01979-ACA** |
| | } | |
| **KYOCERA DOCUMENT** | } | |
| **SOLUTIONS ALABAMA, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Kyocera Document Solutions Alabama, LLC's ("Kyocera") motion for summary judgment. (Doc. 15).

Plaintiff Gregory Holt worked for Kyocera as a delivery truck driver. In November 2016, Mr. Holt was injured on the job and Kyocera terminated his employment after he took five months of leave. Mr. Holt alleges that Kyocera discriminated against him by terminating him because of his disability and by failing to provide a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA").

Mr. Holt's termination claim fails as a matter of law because Mr. Holt has not established a prima facie case of disability discrimination and alternatively, because he has not presented evidence to rebut Kyocera's legitimate, non-

discriminatory reason for his termination.  Mr. Holt's reasonable accommodation claim fails as a matter of law because Mr. Holt has not established that he is a "qualified individual" within the meaning of the ADA.  Accordingly, the court **GRANTS** Kyocera's motion for summary judgment and **WILL ENTER JUDGMENT AS A MATTER OF LAW** in favor of Kyocera and against Mr. Holt on all of his claims.

## I.    BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

### 1.    Kyocera's Operations and Mr. Holt's Employment

Kyocera is a company that provides copier and printer hardware and software products and services to customers throughout Alabama.  (Doc. 16-22 at ¶ 3).  During the relevant time period, Kenneth Hartstock was Kyocera's Branch President and was in charge of overall operations.  (Doc. 16-21 at 6).  Jason Sharp was Kyocera's Controller and oversaw financial operations and human resources. (Doc. 16-13 at 6).

In August 2015, Kyocera hired Mr. Holt as a Warehouse Logistics Driver. (Doc. 16-1 at 14).[1]  Although other employees occasionally made deliveries, Mr. Holt was Kyocera's only delivery driver.  (Doc. 16-1 at 15; Doc. 16-21 at 6, 11).

Mr. Holt's offer letter included the following description of the delivery driver position:

- Deliver equipment safely, efficiently, and courteously to future and current customers
- Help with maintaining the warehouse
- Assist in UPS shipping orders
- Assist in any work related efforts as requested

(Doc. 16-1 at 105).   According to Kyocera's official delivery driver job description, a delivery driver performs the following duties, among others: delivery of Kyocera's products to its customers, loading products onto the delivery truck and offloading them upon arrival at the destination, assisting with shipping and receiving functions, and performing other tasks as requested.  (*Id.* at 106).   In addition, the job description states that a delivery driver must have the ability to lift up to 50 pounds and must be able to bend, stretch, and stand for extended periods of time.  (*Id.*).

Mr. Holt was based out of Kyocera's Birmingham-area office, but he made deliveries for all of the company's four office locations.  (Doc. 16-1 at 15).  On

---

[1] Mr. Holt previously worked for Kyocera as a delivery driver from November 2011 until January 2013.  (Doc. 16-1 at 100–103).  Mr. Holt's first period of employment with Kyocera is not the subject of this lawsuit.

3

delivery days, Mr. Holt helped other employees unbox and assemble copiers that outsider carriers delivered and unloaded at Kyocera's warehouse.  (*Id.* at 15–16). Unless copiers were already on a stand, unboxing and assembling the copiers required Mr. Holt to bend.  (*Id.* at 16–17).

After unpacking and assembling the copiers, Mr. Holt wrapped the copiers in plastic wrap, which also required him to bend over.  (Doc. 16-1 at 18).   Then, Mr. Holt loaded the copiers on to his truck and secured them in place with blankets and corner protectors.  (*Id.* at 19–20).

When Mr. Holt arrived at a customer's location, he would bend over to remove straps, blankets, and corner protectors from a copier before rolling the copier off the truck.  (*Id.* at 20–21).  Mr. Holt, sometimes with the help of another Kyocera employee or the customer's IT employee, would unload the copier and move it to the location where the customer directed.  (Doc. 16-1 at 21).   Mr. Holt would unwrap the plastic wrap and plug the copier in, which required him to bend over.  (*Id.*).  Mr. Holt would then make his next delivery.  (*Id.* at 22).

When he was not making deliveries, Mr. Holt helped other Kyocera employees with a variety of jobs, including cleaning the warehouse, taking old parts to a scrap yard, and stocking boxes of toner on lower shelves.  (Doc. 16-1 at 22–23).  All of these jobs required bending.  (*Id.*).

  
2.      Mr. Holt's On-the-Job Injury and Work Restrictions

On November 2, 2016, Mr. Holt injured his back at work while moving a copier from a freight elevator to the sidewalk. (Doc. 16-1 at 28–29). Later that day, he notified Mr. Sharp of the injury. (*Id.* at 28–29; Doc. 17-1 at 5). At Mr. Sharp's recommendation, Mr. Holt went to the emergency room. (Doc. 16-1 at 24; 16-2 at 5; Doc. 16-13 at 9). Mr. Sharp received an excuse to be off work from November 3 until November 7, 2016. (Doc. 16-1 at 24; Doc. 16-2 at 5). A nurse practitioner then released Mr. Holt to return to work, but Mr. Holt could not stand, walk, bend, squat, climb, reach, twist, crawl, or lift anything over five pounds. (Doc. 16-2 at 6). Mr. Holt did not return to work at that time, and he applied for workers compensation benefits. (*Id.* at 4).[2]

On November 15, 2016, as part of Mr. Holt's workers compensation claim, Mr. Sharp completed a form documenting the job requirements for Mr. Holt's delivery driver position. (*Id.* at 12). Among other things, Mr. Sharp checked boxes indicating that Mr. Holt's job required him to bend and lift up to 50 pounds occasionally (or up to 33% of the time). (Doc. 16-2 at 12).

On November 21, 2016 and again on December 29, 2016, Mr. Holt's doctor wrote generic letters explaining that Mr. Holt could return to work but was unable

---

[2] The parties dispute whether Mr. Holt initially took paid leave or whether Kyocera placed him on unpaid leave. (Doc. 16-8 at 1; 16-22 at ¶ 6; *see also* Doc. 18 at ¶ 9; Doc. 21 at ¶ 13). Mr. Holt's payroll records suggest that he was paid through November 18, 2016. (Doc. 16-8 at 1).

to stoop, bend, crawl, or lift more than 20 pounds.  (Doc. 16-2 at 21; Doc. 16-3 at 8).

On February 1, 2017, Mr. Holt's doctor issued another return to work notice that continued the 20-pound lifting restriction and the bending and crawling restrictions.  (Doc. 16-4 at 3).  Then, at Mr. Holt's request, his doctor changed the lifting restriction to include a 60 pound weight limit instead of 20 pound limit.  (Doc. 17-3 at 2).  Mr. Holt asked the doctor to change the lifting restriction because a recent functional capacity evaluation had cleared him to lift 60 pounds.  (Doc. 16-1 at 35; *see also* Doc. 16-4 at 1–2, 7).

After a March 22, 2017 appointment with his doctor, Mr. Holt's physician continued him on the same restrictions—no lifting over 60 pounds, no bending, and no crawling.   (Doc. 16-4 at 8, 11).

### 3.    Mr. Holt's Communications with Kyocera About Returning to Work

On three occasions between November 2016 and February 2017, Mr. Holt asked Mr. Sharp or Mr. Hartstock about returning to work.  (Doc. 16-1 at 45).  Mr. Holt does not remember the dates, but on the first and second occasions, Mr. Holt spoke with Mr. Hartsock when he gave Mr. Hartsock work restriction notices from his doctor.  (*Id.* at 45–46).  Mr. Holt asked Mr. Hartsock if there was anything he could do, and Mr. Hartsock told him he did not have anything for him.  (*Id.*).  Mr. Holt's third meeting was with Mr. Sharp in February 2017.  (Doc. 16-1 at 46).  Mr.

Holt told Mr. Sharp he needed to come back to work and asked if there was anything he could do, and Mr. Sharp told him that he did not have anything for him to do. (*Id*.). Mr. Holt did not have an updated work restriction when he met with Mr. Sharp. (*Id*.). During these three meetings, Mr. Holt "asked for any job that was available." (Doc. 16-1 at 57).

Mr. Holt testified that he had another conversation with Mr. Sharp and asked to be considered for a sales representative position. (*Id.* at 57–58). Mr. Sharp told Mr. Holt that he was not qualified for that position. (*Id.* at 58). The sales position Mr. Holt wanted had been vacated in December 2016. (Doc. 16-1 at 46; Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3). Instead of filling the position, Kyocera decided to eliminate the position and split the job responsibilities among several employees. (Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3).

At the end of February 2017, Mr. Holt's workers compensation attorney, Ed Berry, began communicating with Kyocera about Mr. Holt's potential return to work. In a February 23, 2017 letter approved by Mr. Holt, Mr. Berry asked Kyocera to modify Mr. Holt's delivery driver job to allow him to perform it in his "limited status" or allow him to transfer to an open position, such as the sales job that he previously discussed with Mr. Sharp. (Doc. 16-1 at 44–45; Doc. 16-6 at 4).

After Mr. Berry sent his letter, Mr. Holt returned to Kyocera's office when he received any updated work restrictions. (Doc. 16-1 at 46). During those visits,

he would ask Mr. Sharp if there was anything for him to do, and on each occasion, Mr. Sharp told him that he did not have anything for him at that time. (*Id.*).

Kyocera's Associate General Counsel, Wylie Van Ness, responded to Mr. Berry's letter on March 13, 2017. (Doc. 16-6 at 6–7). Her letter included Kyocera's delivery driver job description, and it stated that to work as a delivery driver Mr. Holt must be able to lift up to 50 lbs. and bend, stretch, and stand for extended periods. (*Id.*). Ms. Van Ness also noted that Mr. Holt's most recent work restriction notice prohibited him from bending and crawling or lifting more than 60 pounds. (Doc. 16-16 at 6). She then explained that while the weight restriction was within the range stated on Mr. Holt's job description, Kyocera could not return Mr. Holt to the delivery driver position due to the bending requirements of the position. (*Id.*).

Concerning the possibility of moving to a sales position, Ms. Van Ness stated that Mr. Holt did not have many of the qualifications Kyocera looks for in candidates for a sales position, such as sales experience. (Doc. 16-6 at 6). Ms. Van Ness then stated that there were no positions open for which he was qualified and which he could perform with his work restrictions. (*Id.*). Ms. Van Ness explained that Kyocera would give Mr. Holt thirty days to see if he could obtain updated restrictions that would allow him to return to work as a delivery driver. (*Id.*). Ms. Van Ness also stated that if Mr. Holt did not obtain updated restrictions during that

period that would allow him to perform the essential functions of a delivery driver position, Kyocera reserved the right to terminate him. (Doc. 16-6 at 6). Mr. Berry showed Ms. Van Ness's letter to Mr. Holt. (Doc. 16-1 at 48).

On March 23, 2017, Mr. Berry replied to Ms. Van Ness's letter and asked whether Mr. Holt could take Family and Medical Leave Act (FMLA) leave and, if not, whether Kyocera could give Mr. Holt four additional months of extended leave under the ADA. (Doc. 16-6 at 8). Mr. Holt was not aware that Mr. Berry sent this letter, but he concedes that no doctor's note supported the extended leave request. (Doc. 16-1 at 48–49).

On April 6, 2017, Kyocera's outside counsel, Thomas Bright, responded to Mr. Berry's March 23, 2017 letter. (Doc. 16-6 at 9–10). Mr. Bright confirmed that Mr. Holt had been off work since his injury on November 2, 2016. (Doc. 16-6 at 9). Mr. Bright explained that Mr. Holt was not eligible for FMLA leave because Kyocera was not obligated to provide FMLA leave due to its size. (*Id.*). Mr. Bright stated that Kyocera typically grants up to 12 weeks of unpaid, non-FMLA leave to employees for their own serious health condition, and it had provided Mr. Holt leave for approximately 22 weeks. (Doc. 16-6 at 9).

Mr. Bright explained that the request for an additional four months of leave was not reasonable because Mr. Holt had been the only route delivery driver in the office, and Kyocera had had difficulty hiring temporary workers to fill the need.

9

(*Id.*).  He noted that when a temporary route driver had not been available, other Kyocera employees, including the general manager, had to put aside their existing duties to make deliveries, and that continuing to do so for an additional four months would place an undue hardship on Kyocera.  (*Id.* at 9–10).  With respect to Mr. Holt's request to be placed in a sales position, Mr. Bright stated that because Mr. Holt had no prior sales experience, he did not possess the critical skills for such a position.  (Doc. 16-6 at 10).

Mr. Bright then reiterated Kyocera's need for a route driver "immediately" and stated that if Mr. Holt could present an updated list of restrictions that would allow him to work as a delivery driver by April 15, 2017, then Kyocera would return him to work in the position.  (*Id.*).  The letter also stated that if Mr. Holt could identify a reasonable accommodation that would allow him to perform the essential functions of his delivery driver job, Kyocera would consider it.  (*Id.*).  Finally, Mr. Bright's letter advised that if Mr. Holt was not able to perform the essential functions of his position by April 15, 2017, then Kyocera would have no option but to terminate his employment.  (Doc. 16-6 at 10).

### 4. Mr. Holt's Termination

Neither Mr. Berry nor Mr. Holt responded to Mr. Bright's April 6, 2017 letter by the April 15, 2017 deadline, and Mr. Holt had no further conversations with anyone at Kyocera after that date.  (Doc. 16-1 at 50).  Therefore, Mr.

Hartsock, after consulting with Mr. Sharp and Kyocera's parent company's human resources and legal team, decided to terminate Mr. Holt's employment.  (Doc. 16-21 at 19–22).

On April 20, 2017, Mr. Sharp sent Mr. Holt a letter notifying him that Kyocera had terminated his employment. (Doc. 16-1 at 50; Doc. 16-6 at 11).  The letter stated that Kyocera had not received an updated letter from Mr. Holt's doctor enabling him to return to work and "perform the essential functions of the delivery driver role as set forth in" the job description.  (Doc. 16-6 at 11).  Mr. Holt did not contact Mr. Sharp or anyone at Kyocera after receiving the letter.  (Doc. 16-1 at 51).

## II.    DISCUSSION

Mr. Holt asserts that his termination and Kyocera's failure to provide a reasonable accommodation violated the ADA.  The court considers the claims in reverse order.

### 1.    ADA Reasonable Accommodation

Mr. Holt claims that Kyocera denied his request for a reasonable accommodation, in violation of the ADA. (Doc. 1 at  6–7).

Under the ADA, an employer may not discriminate against a "qualified individual on the basis of disability."  42 U.S.C. § 12111(a).  "[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known

11

physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business. . . . " 42 U.S.C. § 12112(b)(5)(A).  Therefore, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship."  *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

Kyocera argues that is entitled to judgment as a matter of law on Mr. Holt's failure to accommodate claim because he has not created a question of fact about whether he is a "qualified individual" within the meaning of the ADA.[3]  The court agrees.

The ADA defines a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

At the heart of this case is whether bending was an essential function of Mr. Holt's delivery driver position.  The evidence establishes that all doctor's restrictions in place since Mr. Holt's injury on November 2, 2016 indicate that he

---

[3] Kyocera also argues that even if Mr. Holt were a "qualified individual," it can establish the affirmative defense of undue hardship.  (Doc. 18 at 31–33).  As explained below, Mr. Holt has not presented evidence creating a genuine dispute about whether he is a "qualified individual."  Therefore, the court does not consider Kyocera's alternative argument.

cannot bend. (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3; Doc. 17-4 at 2).[4]   Therefore, if bending is an essential function of Mr. Holt's job, then he could not perform the essential functions of the job without an accommodation.

"'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  To determine what functions are essential, the ADA states that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  42 U.S.C. § 12111(8).  The court also may consider a number of other factors, including "[t]he amount of time spent on the job performing the function."  20 C.F.R. § 1630.2(n)(3)(iii).

Mr. Holt claims that because Kyocera provided three different job descriptions—Mr. Holt's offer letter, the company's official job description, and the job requirements form that Mr. Sharp completed as part of Mr. Holt's workers

---

[4] Mr. Holt contends that some medical notes that suggest that he could bend. (Doc. 21 at ¶¶ 15–17) (citing Doc. 16-2 at 18; Doc. 17-2 at 2, 6–7).  Mr. Holt has not demonstrated that he provided this documentation to Kyocera before his termination when Kyocera asked for information about his restrictions.  Moreover, these records do nothing to undermine the multiple work restrictions issued by My Holt's physician which state unequivocally that he cannot bend. (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3; Doc. 17-4 at 2).

13

compensation claim—the evidence creates a question of fact as to which job description controls in determining the essential functions of Mr. Holt's position. (Doc. 21 at 17–21). The court is not persuaded and finds that the evidence establishes that bending was an essential function of the delivery driver position.

The record is unclear whether Kyocera prepared and distributed the delivery driver job description before advertising or interviewing applicants for the position, but even if it did not, Mr. Holt has not suggested that the court cannot consider the document as evidence of Kyocera's judgment about the essential functions of the job. And the document states that the delivery driver "[m]ust be able to bend . . . for extended periods of time." (Doc. 16-1 at 106).

The job functions form that Mr. Sharp completed as part of Mr. Holt's workers compensation claim is not, as Mr. Holt suggests, an official job description. It is however evidence of Kyocera's judgment about the fundamental aspects of Mr. Holt's delivery driver position. And the form is consistent with the official job description because it states that Mr. Holt was required to bend "occasionally," or up to 33% of the time. (*Id.*).

Mr. Holt testified that many tasks that accompanied his deliveries required him to bend. For example, Mr. Holt explained that unpacking all copiers that were not already on a stand, assembling them, wrapping them for transit, loading them on his truck, and unwrapping them at a customer's destination required him to

14

bend.  (Doc. 16-1 at 16–22).  So, by his own testimony, Mr. Holt could not prepare and deliver all of his loads without bending.  In addition, Mr. Holt testified that the non-delivery related tasks outlined in his job offer letter, such as cleaning the warehouse, picking up and taking old parts to a scrap yard, and stocking boxes of toner on lower shelves, required bending.  (Doc. 16-1 at 16–23; 105).   Therefore, as outlined in his job offer letter, Mr. Holt's testimony confirms that to "deliver equipment," to "help with maintaining the warehouse," and to "assist in any work related efforts as requested," he was required to bend.  (Doc. 16-1 at 105; *see also* Doc. 16-1 at 16–22).

Given Kyocera's documented emphasis on the importance of bending to the delivery driver position and Mr. Holt's own testimony, the court concludes that bending is an essential function of Mr. Holt's job.  Therefore, the court must determine whether a reasonable accommodation would have allowed Mr. Holt to perform this essential function.

"The plaintiff bears the burden of identifying an accommodation and showing that the accommodation would allow him to perform the essential functions of the job in question." *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017); *see Holly*, 492 F.3d at 1256 ("An accommodation is 'reasonable' and necessary under the ADA . . . only if it enables the employee to perform the essential functions of the job.").

15

In his brief in opposition to Kyocera's motion for summary judgment, Mr. Holt claims that he "could have performed the essential functions of his position with minimal modifications."  (Doc. 21 at 21).  But Mr. Holt does not identify what "minimal modifications" he ever requested or how those modifications would enable him to perform the bending function of his job.  During his three conversations with Mr. Sharp or Mr. Hartstock between November 2016 and February 2017, Mr. Holt asked generically if there was "anything" he could do. (Doc. 16-1 at 45–46).  Mr. Holt never asked for a specific accommodation to his delivery driver position.

Mr. Holt's counsel's February 23, 2017 letter is similarly lacking in detail. The letter asked Kyocera to modify the driver job so that Mr. Holt could perform the job in his "limited status."  (Doc. 16-4 at 4).  But much like Mr. Holt's vague inquiries into whether Kyocera "anything" for him to do, his counsel's letter likewise does not request that Kyocera modify the job in any particular way.

Mr. Holt argues that these requests to return to work triggered Kyocera's "duty to engage with him in considering various reasonable accommodations." (Doc. 21 at 21).  But, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *see Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff

16

cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."). In any event, through its April 6, 2017 letter to Mr. Holt's counsel, Kyocera invited Mr. Holt to identify a reasonable accommodation for it to consider. (Doc. 16-6 at 10). But neither Mr. Holt nor his counsel responded. (Doc. 16-1 at 50).

The only specific request that Mr. Holt personally made was that Kyocera reassign him to a sales position. (Doc. 16-1 at 57–58). Reassignment to a vacant position can be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). However, in this case, there was no vacant sales position to which to transfer Mr. Holt. Following the sale representative's resignation, Kyocera decided not to replace the employee and instead chose to eliminate his position and divide the job functions among other employees. (Doc. 16-22 at ¶ 4; Doc. 16-23 at ¶ 3).

Moreover, even if the position had been vacant and Mr. Holt was qualified for the job (which Kyocera disputes), Kyocera's failure to reassign him does not constitute denial of a reasonable accommodation because the evidence establishes that the sales position is a higher paying exempt position than Mr. Holt's lower paying non-exempt driver position. (Doc. 16-22 at ¶ 5). And "[t]he ADA does not mandate that employers promote disabled employees in order to accommodate them." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 (11th Cir. 2001).

17

To the extent Mr. Holt's counsel's March 23, 2017 request that Kyocera continue Mr. Holt's leave for an additional four months constitutes a request for an accommodation (*see* doc. 16-6 at 8),[5] such a request is not reasonable under the circumstances. "[A] leave of absence might be a reasonable accommodation in some cases," but such a request is unreasonable if it does not allow an employee to perform his job duties "in the present or in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). By the time Mr. Holt requested an additional four months of leave, he had already been off work for almost five months. (Doc. 16-6 at 8–9). And Kyocera had provided Mr. Holt 22 total weeks of unpaid leave, which is 10 more weeks of unpaid leave than it generally provided to employees to care for serious health conditions. (Doc. 16-6 at 9). In addition, Mr. Holt's request for additional leave was not supported by any documentation that he would be able to perform the essential functions of his job at the end of the four-month period. (Doc. 16-6 at 8). In fact, the record establishes that Mr. Holt's doctor issued yet another bending restriction eight months after Mr. Holt's termination. (Doc. 17-4 at 2). Thus, Mr. Holt's request that Kyocera give him an additional four months of leave when he could not show that he would likely be able to perform the essential functions of his job is not a reasonable

---

[5] Mr. Holt's opposition to Kyocera's motion for summary judgment does not mention this request or otherwise argue that it is a reasonable accommodation. (*See generally* Doc. 21).

18

accommodation under the ADA.  *See Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997).

Mr. Holt argues that Kyocera could have considered job restructuring and a part-time work schedule as reasonable accommodations.  (Doc. 21 at 21).  Job restructuring and part-time schedules are examples of reasonable accommodations under the ADA.  42 U.S.C. § 12111(9)(B).  But there is no evidence that Mr. Holt requested that Kyocera accommodate him in this manner while employed.  And even more fatal to Mr. Holt's claim is that his doctor's restrictions prohibit all bending.  (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11; Doc. 17-3 at 2–3).  Therefore, Mr. Holt has not presented evidence regarding how these accommodations would have allowed him to perform the essential function of bending.  Accordingly, they are not reasonable accommodations.

Because Mr. Holt has not created a question of fact about whether he is a "qualified individual," his ADA reasonable accommodation claim fails, and the court **GRANTS** Kyocera's motion for summary judgment on this claim.

2.    ADA Termination

Mr. Holt also asserts that Kyocera terminated him because of his disability, in violation of the ADA.  (Doc. 1 at 5–6).

In the absence of direct evidence, courts analyze claims of discrimination in violation of the ADA under the burden-shifting framework established in

19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).  Under that test, the plaintiff must first establish a prima facie case of discrimination, creating a rebuttable presumption that the employer acted unlawfully.  *Id.* at 1336.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Holly*, 492 F.3d at 1255–56.  Next, the burden shifts to the employer to "articulat[e] a legitimate nondiscriminatory reason for the challenged employment decision."  *Farley*, 197 F.3d at 1336.  If the employer can satisfy its burden, then the plaintiff must offer evidence that the reason proffered was a pretext for discrimination or retaliation.  *Id.* To establish that a reason was pretextual, the plaintiff must present evidence that "the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Kyocera argues that Mr. Holt cannot establish a prima facie case because he cannot show that he is a qualified individual or that Kyocera terminated him because of his disability.  (Doc. 18 at 33–35).  Kyocera also argues that even if Mr. Holt could establish a prima facia case, he cannot demonstrate that Kyocera's

articulated non-discriminatory reason for his termination is pretext for unlawful discrimination.  (*Id.* at 35–37).

Again, and for the same reasons explained above, *see supra* pp. 11–19, Mr. Holt has not created a question of fact about whether he is a "qualified individual" under the ADA.  Therefore, he cannot establish a prima facie case of disability discrimination based on his termination.[6]

Even if Mr. Holt could establish a prima facie case of disability discrimination, he has not offered evidence demonstrating that Kyocera's articulated reason for terminating his employment is pretext for unlawful discrimination.

Kyocera's articulated legitimate, non-discriminatory reason for Ms. Holt's termination is that it believed that given his doctor's no bending restriction, Mr. Holt "could not do the basic delivery driver tasks to do the job."  (Doc. 16-21 at 19; *see also id.* at 22; Doc. 16-6 at 11).  Mr. Holt attempts to establish pretext by claiming that Kyocera's "asserted honest belief that Mr. Holt could not bend at all flies in the face of not only the record, but also logic itself."  (Doc. 21 at 27).  The court disagrees.

---

[6] Because Mr. Holt cannot establish the second element of his prima facie case, namely whether he was a "qualified individual" under the ADA, the court does not consider Kyocera's argument that Mr. Holt has not shown that it discriminated against him because of his disability by terminating him.

21

Contrary to Mr. Holt's position, Kyocera did not argue that "Mr. Holt's disability status within the workers' compensation framework provided the particularized facts to support its 'honest belief'" that Mr. Holt could not return to work. (Doc. 21 at 27). Mr. Holt's termination letter notes that he had been on workers compensation leave for five months. (Doc. 16-6 at 9). But the undisputed evidence is that Kyocera made the decision to terminate Mr. Holt's employment because despite its request, neither Mr. Holt nor his attorney provided Kyocera with information suggesting that Mr. Holt's doctor had lifted his bending restriction, and if Mr. Holt could not bend, then he could not perform the essential functions of his position. (Doc. 16-21 at 19, 22; Doc. 16-6 at 9; Doc. 16-6 at 11).

Mr. Holt claims that his doctor's work restrictions "must be read within the context of his office visit notes," and that Kyocera "disregards evidence indicating that, at the time of his termination, Mr. Holt's restrictions were only temporary," as his doctor did not issue a permanent no bending restriction until April 18, 2018. (Doc. 21 at 28). Mr. Holt has presented no evidence demonstrating that he provided his doctor's office visit notes to Kyocera at any point while he was on leave or that they establish that he could perform his delivery driver position. In addition, even if Mr. Holt's bending restriction was temporary as of the date of his termination, every restriction he provided to Kyocera after his injury stated that he could not bend. (*See* Doc. 16-2 at 6, 21; Doc. 16-3 at 8; Doc. 16-4 at 3, 7–8, 11;

22

Doc. 17-3 at 2–3).  That Mr. Holt's doctor ultimately determined that the bending restriction was permanent does not undermine Kyocera's belief as of April 28, 2017, that Mr. Holt could not bend with or without accommodation, and therefore, could not perform his job.

Accordingly, Mr. Holt has not created a genuine dispute of material fact about Kyocera's belief that he could not perform the essential functions of his position.

Because Mr. Holt has not established a prima facie case of disability discrimination and because he has not created a genuine dispute of material fact about whether Kyocera's articulated reason for his termination was pretext for discrimination under the ADA, the court **GRANTS** Kyocera's motion for summary judgment on Mr. Holt's ADA termination claim.

23

## III.  CONCLUSION

The court **GRANTS** Kyocera's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of Kyocera and against Mr. Holt on all of his claims.  The court will enter a separate final judgment in accordance with this opinion.

**DONE** and **ORDERED** this May 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

24

FILED

2020 May-27  AM 08:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY HOLT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  1:18-cv-01979-ACA** |
| | } | |
| **KYOCERA DOCUMENT** | } | |
| **SOLUTIONS ALABAMA, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## FINAL JUDGMENT

Consistent with the accompanying memorandum opinion, the court **ENTERS JUDGMENT AS A MATTER OF LAW** in favor of Defendant Kyocera Document Solutions Alabama, LLC and against Plaintiff Gregory Holt on all of his claims.

The court **DIRECTS** the Clerk to close this case.

**DONE** and **ORDERED** this May 27, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE